# IN THE UNITED STATES DISTRICT COURT FOR THE
# WESTERN DISTRICT OF OKLAHOMA

COREY E. DEGEARE,                    )
                                     )
    Petitioner,                  )
                                     )
v.                                   )          Case No. CIV-17-244-D
                                     )
CARL BEAR,                           )
                                     )
    Respondent.                  )

## ORDER

This matter is before the Court for review of the Report and Recommendation [Doc. No. 17], issued by United States Magistrate Judge Shon T. Erwin pursuant to 28 U.S.C. § 636(b)(1)(B) and (C). Judge Erwin recommends the denial of the Amended Petition for Writ of Habeas Corpus Under 28 U.S.C. § 2254. Within the time limits authorized by the Court, Petitioner, through counsel, filed objections. Accordingly, the Court must make a *de novo* determination of any portion of the Report to which a specific objection is made, and may accept, modify, or reject the recommended decision in whole or in part. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b)(3).

## BACKGROUND

Petitioner was charged in Cleveland County District Court after his stepdaughters, K.G. and M.G., made allegations of sexual abuse. The allegations spanned from September 2006 through March 2009. A jury acquitted Petitioner on Count One and convicted

Petitioner on Counts Two through Eight.[1]  In accordance with the jury's recommendation, the trial court sentenced Petitioner to life imprisonment on Counts Two, Three, and Four and 15 years' imprisonment on Counts Five, Six, and Seven, all running concurrently.  O.R. at 209-211.  Petitioner received a 10-year suspended sentence on Count Eight, which was ordered to run consecutively to the sentences in Counts Two through Seven.  *Id.*

Petitioner appealed his convictions to the Oklahoma Court of Criminal Appeals ("OCCA").  The OCCA affirmed Petitioner's convictions and sentences.  Subsequently, Petitioner filed a *pro se* application for post-conviction relief in the District Court of Cleveland County.  Petitioner raised several claims, including ineffective assistance of appellate counsel.  The trial court appointed Petitioner counsel and conducted an evidentiary hearing on his ineffective assistance of appellate counsel claim.  Thereafter, the trial court issued an order denying post-conviction relief.

Petitioner, through counsel, then filed an appeal challenging the trial court's order and raising new post-conviction claims.  The OCCA affirmed the denial of post-conviction relief and held that Petitioner's new claims had not been properly raised. Petitioner now seeks federal habeas relief from his state convictions.

---

[1] The Amended Felony Information charged Petitioner as follows:  Count One, lewd act with a child under the age of 16 (K.G.); Count Two, first-degree rape of a victim under the age of 14 (M.G.); Count Three, first-degree rape of a victim under the age of 14 (M.G.); Count Four, first-degree rape of a victim under the age of 14 (M.G.); Count Five, forcible sodomy (M.G.); Count Six, forcible sodomy (M.G.); Count Seven, forcible sodomy (M.G.); and Count Eight, lewd act with a child under the age of 16 (K.G.).  O.R. at 38-41.

## STANDARD OF REVIEW

The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") and 28 U.S.C. § 2254 govern the Court's power to grant federal habeas relief to a state prisoner. Once a state court has adjudicated a particular claim on the merits, Petitioner must demonstrate that the adjudication:

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d). "This is a 'difficult to meet' and 'highly deferential standard for evaluating state-court rulings, which demands that state-court decisions be given the benefit of the doubt.'" *Cullen v. Pinholster*, 563 U.S. 170, 181 (2011) (internal citations omitted). Indeed, this standard "reflects the view that habeas corpus is a guard against extreme malfunctions in the state criminal justice systems, not a substitute for ordinary error correction through appeal." *Harrington v. Richter*, 562 U.S. 86, 102-103 (2011) (internal quotations omitted). "When a federal claim has been presented to a state court and the state court has denied relief, it may be presumed that the state court adjudicated the claim on the merits in the absence of any indication or state-law procedural principles to the contrary." *Id.* at 99.

A state court decision is "contrary to" Supreme Court precedent "if the state court arrives at a conclusion opposite to that reached by [the Supreme Court] on a question of law." *Williams v. Taylor*, 529 U.S. 362, 405 (2000) (O'Connor, J., concurring and

3

delivering the opinion of the Court). A decision will also be "contrary to" Supreme Court precedent "if the state court confronts a set of facts that are materially indistinguishable from a decision of [the Supreme Court] and nevertheless arrives at a result different from [Supreme Court] precedent." *Id.* at 406. The "unreasonable application" prong comes into play when "the state court identifies the correct governing legal rule from [Supreme Court] cases but unreasonably applies it to the facts of the particular state prisoner's case" or "unreasonably extends a legal principle from [Supreme Court] precedent to a new context where it should not apply or unreasonably refuses to extend that principle to a new context where it should apply." *Id.* at 407.

## ANALYSIS

As grounds for habeas review, Petitioner presents one broad claim of ineffective assistance of appellate counsel broken down into numerous sub-claims. Specifically, Petitioner asserts that his appellate counsel should have:

(1)     challenged the trial court's ruling preventing Kameron Beckman from testifying that K.G. and M.G. had previously made false allegations of sexual molestation against him;

(2)     argued trial counsel was ineffective for failing to present evidence that would have made Mr. Beckman's testimony admissible;

(3)     argued trial counsel was ineffective for not calling Kathy Hatelid, a physician's assistant at Children's Hospital, to testify about the lack of physical evidence of rape;

(4)     challenged trial counsel's failure to introduce Petitioner's medical records showing he suffered from erectile dysfunction;

(5)     claimed trial counsel was ineffective for not cross-examining M.G. about her preliminary hearing testimony where she described Petitioner's genitalia;

(6)     raised a prosecutorial misconduct claim involving the State's statement in closing argument that the girls had no motive to lie;

(7)     argued trial counsel should have attempted to admit Petitioner's polygraph results at trial;

(8)     challenged the inadmissibility of polygraph results as an equal protection violation; and

(9)     claimed trial counsel was ineffective for not attempting to introduce evidence that Petitioner's brother was a convicted sex offender and possible alternate perpetrator.

### A.     Petitioner's Procedurally Barred Claims

Judge Erwin held that Sub-Claims Two, Four, Five, Seven, and Nine are procedurally barred. Petitioner concedes that Sub-Claims Five and Nine are procedurally barred, but objects to application of a procedural bar to the other claims. Petitioner's counsel asserts that Petitioner raised the substance of Sub-Claims Two, Four and Seven, "although perhaps inartfully," in his post-conviction application filed in Cleveland County District Court. Pet'r's Objections to R&R [Doc. No. 18 at n. 2].

The Court has carefully reviewed Petitioner's Application for Post-Conviction Relief [Doc. No. 13-4], Petitioner's Brief in Support of his Application for Post-Conviction Relief [Doc. No. 13-5] and the transcript from the evidentiary hearing held before the district court on June 22, 2016. The Court concurs with the conclusions of Judge Erwin and the OCCA that Petitioner did not raise Sub-Claims Two, Four and Seven at the state district court level.

In his *pro se* application, Petitioner indicated he had three propositions for relief and referred the Court to his brief regarding those propositions. [Doc. No. 13-4]. Petitioner

identified Proposition One in his brief as "Ineffective Assistance of Appellate Counsel in Violation of the Sixth Amendment of the United States Constitution." [Doc. No. 13-5].

Under Proposition One, Petitioner alleged that his appellate attorney was ineffective for: (1) failing to remain in contact with him; (2) failing to secure an affidavit from trial counsel admitting his ineffectiveness; and (3) failing to provide Petitioner a copy of his direct appeal brief for review. In a cursory fashion, Petitioner also indicated under that same proposition that he would be addressing "prosecutorial misconduct" and the trial court's "abuse of discretion … in connection with the Rape Shield Clause" and "newly discovered evidence from the Oklahoma County Court Clerk in regards to Kameron Beckman." [Doc. No. 13-5 at 5]. Petitioner did not indicate in any way that these other alleged errors were tied to his theory that appellate counsel was ineffective. Further, Petitioner indicated he would address his trial counsel's "failures in a separate proposition." *Id.*

Proposition Two was titled, "The Petitioner States that there Exists Evidence of Material Facts Not Previously Presented and Heard that Requires Vacation of Conviction and Sentence in the Interest of Justice." *Id.* at 6. Under this proposition, Petitioner attached medical records of M.G. and K.G. from Children's Hospital. *Id*. at 42-69. Petitioner asserted that this evidence negated his guilt and questioned the reliability of the verdict. *Id.* at 6. In connection with this "new evidence," he alleged no errors by his appellate counsel.

Under that same proposition, Petitioner argued that his due process rights were violated because the trial court did not admit Mr. Beckman's testimony. *Id*. at 7. Petitioner

also argued that his right to confrontation was violated because the trial court did not allow him to cross-examine M.G. and K.G. concerning their allegations of sexual molestation against Mr. Beckman. *Id.* at 8. Petitioner did not couch these arguments in terms of any failure or error by his appellate counsel.

Under Proposition Two, Petitioner also addressed the fact that his originally retained counsel had him undergo a polygraph examination. To that end, Petitioner asserted that the Equal Protection Clause is violated when polygraph results are inadmissible at trial but are admissible in post-conviction proceedings. *Id.* at 15. Petitioner also submitted his medical records as evidence he was being treated for testicular failure from November 2007 through February 2009. *Id.* at 17, 79-86. Petitioner asserted that this evidence undermined the verdict. *Id.* at 17. Again, he alleged no errors by his appellate counsel in relation to these evidentiary issues.

Petitioner argued in Proposition Three that his conviction was in violation of the United States and Oklahoma Constitutions. *Id.* at 17. Under that proposition, he addressed the trial court's ruling that the 911 call log was inadmissible. He addressed the victims' inconsistent statements. He further indicated he was prejudiced by trial counsel's deficient performance. In the last sentence of Proposition Three, Petitioner asserted that his appellate counsel's performance was "substandard and incompetent" and that both prongs under *Strickland v. Washington* were met. *Id.* at 28.

Although *pro se* litigants are given more leeway in drafting their pleadings than counsel, the pleadings still must be coherent enough to allow for an intelligent response. *Carpenter v. Williams*, 86 F.3d 1015, 1016 (10th Cir. 1996). The Court does not "assume

the role of advocate" and "should dismiss claims which are supported only by vague and conclusory allegations." *Northington v. Jackson*, 973 F.2d 1518, 1521 (10th Cir. 1992). The "rule of liberal construction stops, however, at the point at which [the Court begins] to serve as [Petitioner's] advocate." *United States v. Pinson*, 584 F.3d 972, 975 (10th Cir. 2009). "[T]he court cannot take on the responsibility of serving as the litigant's attorney in constructing arguments and searching the record." *Garrett v. Selby Connor Maddux & Janer*, 425 F.3d 836, 840 (10th Cir. 2005). Finally, the Court "will not supply additional factual allegations to round out a plaintiff's complaint or construct a legal theory on a plaintiff's behalf." *Whitney v. New Mexico*, 113 F.3d 1170, 1173-1174 (10th Cir. 1997) (*citing Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991)).

Simply put, Petitioner did not argue in his post-conviction application or brief or at the evidentiary hearing that his appellate counsel was ineffective for failing to present evidence that would have made Mr. Beckman's testimony admissible. He discussed Mr. Beckman's testimony, but he never tied it to his theory of ineffective assistance of appellate counsel. Likewise, Petitioner did not argue that his appellate counsel should have challenged his trial counsel's failure to introduce Petitioner's medical records showing he had testicular failure or erectile dysfunction. Although he attached the relevant medical records to his brief, it is not the "proper function of the district court to assume the role of advocate." *Garrett*, 425 F.3d at 840. Finally, he made conclusory statements about his polygraph results and the Equal Protection Clause, but he did not argue that appellate counsel, or trial counsel for that matter, was ineffective in not attempting to have such evidence admitted at trial. Petitioner's conclusory claim that his appellate counsel was

"substandard and incompetent" under *Strickland* "without supporting factual averments" is insufficient to support his claim. *United States v. Fisher*, 38 F.3d 1144, 1147 (10th Cir. 1994) (Although the Court must liberally construe Petitioner's *pro se* petition, the Court is "not required to fashion [Petitioner's] arguments for him where his allegations are merely conclusory in nature and without supporting factual averments.")

Oklahoma's post-conviction procedures appear in OKLA. STAT. tit. 22, § 1086, *et seq*. and Rule 5.1 *et seq.* of the Rules of the Court of Criminal Appeals. OKLA. STAT. tit. 22, § 1086 provides in relevant part: "All grounds for relief available to an applicant under this act must be raised in his original, supplemental or amended application. Any ground … not so raised … may not be the basis for a subsequent application …." Rule 5.2(A) provides that an appeal to the OCCA "under the Post-Conviction Procedure Act constitutes an appeal from the issues raised, the record, and findings of fact and conclusions of law made in the District Court in non-capital cases." OKLA. STAT. tit. 22, Ch. 18, App., Rule 5.2(A). Further, the Tenth Circuit has recognized that the OCCA's "Rule 5.2(A) – which precludes defendants from raising new issues to the OCCA" in a post-conviction application appeal – "constitutes an adequate and independent state ground" for a procedural bar. *Brown v. Allbaugh*, 678 Fed. Appx. 638, 642 (10th Cir. Jan. 31, 2017) (unpublished).[2] *See also Brecheen v. Reynolds*, 41 F.3d 1343, 1356 (10th Cir. 1994) (In general, Oklahoma's application of waiver principles to claims raised in a post-conviction proceeding is both an "independent" and "adequate" state procedural bar.); *Hyatt v. Rudek*,

---

[2] Unpublished opinion cited pursuant to FED. R. APP. P. 32.1(a) and 10TH CIR. R. 32.1.

Case No. CIV-10-1396-F, 2011 WL 3348225, * at 3 (W.D. Okla. June 28, 2011) (finding

OCCA's Rule 5.2(A) to be an independent and adequate state ground for procedural bar

purposes).

This Court will not review a claim that has been "defaulted in state court on an

independent and adequate state procedural ground, unless the petitioner can demonstrate

cause and prejudice or a fundamental miscarriage of justice." *English v. Cody*, 146 F.3d

1257, 1259 (10th Cir. 1998); *see also Coleman v. Thompson*, 501 U.S. 722, 750 (1991).

The Court concurs with Judge Erwin that Petitioner has not shown either cause and

prejudice or a fundamental miscarriage of justice to overcome the procedural bar.

In his amended petition and reply brief to this Court, Petitioner suggested that the

"cause" for the default was his post-conviction counsel's failure to raise these issues to the

district court either at the evidentiary hearing or in a supplement to Petitioner's *pro se* post-

conviction application. Petitioner cited to the United States Supreme Court's holding in

*Martinez v. Ryan*, 566 U.S. 1 (2012). Petitioner now concedes that the Supreme Court's

holding in *Davila v. Davis* forecloses a state prisoner seeking federal habeas relief from

establishing "cause" by alleging that his post-conviction counsel was ineffective for failing

to raise the claim that his appellate counsel was ineffective. *Davis*, 137 S.Ct. 2058, 2065-

2067 (2017).[3]

─────────────────────

[3] Petitioner still objects to the application of *Davis* to preserve the issue for appeal. The
Court finds that *Davis* is applicable here and not *Martinez*. *Martinez* provides a very
narrow exception to the general rule governing procedural default. Arizona state prisoners
may raise claims of ineffective assistance of trial counsel only in state collateral
proceedings and not on direct appeal. *Martinez*, 566 U.S. at 4. The Court in *Martinez* "was
concerned that a claim of trial error – specifically, ineffective assistance of trial counsel –

Petitioner argues that denying review here would result in a fundamental miscarriage of justice because he has made a "'credible' showing of actual innocence." *Frost v. Pryor*, 749 F.3d 1212, 1231 (10th Cir. 2014). The Court disagrees. "To make a credible showing of actual innocence, a 'petitioner must support his allegations of constitutional error with new reliable evidence – whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence – that was not presented at trial.'" *Id*. at 1231-1232. The door opens when a petitioner presents "evidence of innocence so strong that a court cannot have confidence in the outcome of the trial unless the court is also satisfied that the trial was free of nonharmless constitutional error." *Schlup v. Delo*, 513 U.S. 298, 316 (1995). This standard is "demanding and permits review only in the extraordinary case." *Frost*, 749 F.3d at 1232 (*quoting House v. Bell*, 547 U.S. 518, 538 (2006)). Although Petitioner does not have to establish "absolute certainty" of his innocence, his burden, in light of the new evidence, is to show that no reasonable juror would find him guilty beyond a reasonable doubt. *House*, 547 U.S. at 538. Petitioner cannot meet that burden.

First, any evidence of his alleged testicular failure or erectile dysfunction is not new. Petitioner would have been aware of such evidence at trial. Further, such evidence is not

_____

might escape review in a [s]tate that required prisoners to bring the claim for the first time in state post-conviction proceedings rather than on direct appeal." *Davis*, 137 S.Ct. at 2067. As the Court explained, "the limited nature" of its holding "reflect[ed] the importance of the right to the effective assistance of *trial* counsel," which is "a bedrock principle in our justice system." *Davis*, 137 S.Ct. at 2066-2067 (*quoting Martinez*, 566 U.S. at 12) (emphasis in original).

probative of his actual innocence. Petitioner was convicted in Count Eight of lewd acts with a child under age 16. K.G. was legally incapable of giving consent, due to her young age; and furthermore, the crime of lewd acts only requires a touching – not penetration. O.R. at 40, 157; *see also* OKLA. STAT. tit. 21, § 1123(A)(4) and (A)(5)(f); OUJI-CR 4-129; *Riley v. State*, 947 P.2d 530, 534 (Okla. Crim. App. 1997) (penetration is not an element of lewd molestation). Similarly, any penetration, however slight, is sufficient to complete the crime of rape or forcible sodomy. O.R. at 154-155, 158; *see also* OUJI-CR 4-120, 122 and 128.

The Court has reviewed Petitioner's medical records attached to his post-conviction application that were generated from November 13, 2007, through February 10, 2009. [Doc. No. 13-5 at 79-86]. At the outset, the Court notes that the records do not span the entire period of the alleged sexual abuse, which was September 2006 through March 2009. The medical records reflect that at least since November 2007, Petitioner was prescribed testosterone injections for testosterone deficiency and testicular failure and that he was compliant with his medications. They do not show an active diagnosis of erectile disorder until February 10, 2009. Moreover, they do not indicate that because of these conditions Petitioner was unable to engage in sexual intercourse or have an erection during the period of time when his crimes allegedly occurred. Further, had such evidence been introduced, a jury could have viewed it as evidence of a motive for why Petitioner was allegedly engaging in sexual conduct with young girls. In addition, the fact that he was being treated for the condition and on medication may have bolstered the victims' claims that he engaged in sexual conduct with them.

The same is true of the polygraph evidence.[4] Petitioner has not shown that it is "new reliable evidence." *Frost*, 749 F.3d at 1231-1232. Petitioner had the polygraph results before trial. [Doc. No. 13-5 at 15]. Further, the OCCA has continuously held that polygraph results are inadmissible at trial. *See Folks v. State*, 207 P.3d 379, 383 (Okla. Crim. App. 2008); *Matthews v. State*, 953 P.2d 336, 343 (Okla. Crim. App. 1998) ("the results of polygraph tests are not admissible for any purpose"). The Tenth Circuit has also noted that "[i]n Oklahoma, the results of polygraph tests are inadmissible for any purpose." *Mitchell v. Jones*, 415 Fed. Appx. 106, 109 (10th Cir. March 8, 2011) (unpublished).[5]

In federal court, a party seeking "to admit polygraph evidence as an indicator of honesty" must satisfy the criteria for admission under *Daubert* and FED. R. EVID. 702. *United States v. Tenorio*, 809 F.3d 1126, 1131 (10th Cir. 2015); *United States v. Call,* 129 F.3d 1402, 1404 (10th Cir. 1997). The Tenth Circuit in *Call* cautioned that its "holding does not suggest a newfound enthusiasm for polygraph evidence," and, in order to be admissible, polygraph examinations must satisfy the requirements of FED. R. EVID. 702 and 403. *Call*, 129 F.3d at 1405. The Court in *Call* also noted that *Daubert* did not "disturb the settled precedent that polygraph evidence is neither reliable nor admissible to show that one is truthful." *Id.* "[T]here is simply no consensus that polygraph evidence is reliable. To this day, the scientific community remains extremely polarized about the reliability of polygraph techniques." *United States v. Scheffer*, 523 U.S. 303, 309 (1998).

---

[4] Although Petitioner indicates that he successfully passed a polygraph examination, the Court finds no results of any polygraph examination in the record.

[5] Unpublished opinion cited pursuant to FED. R. APP. P. 32.1(a) and 10TH CIR. R. 32.1.

Here – assuming the polygraph evidence was favorable to Petitioner and because he testified at trial that he did not commit the relevant sexual acts – at best, it would have served only to bolster his own credibility, not affirmatively demonstrate his actual innocence. *See Call*, 129 F.3d at 1406 (the credibility of witnesses is generally not an appropriate subject for expert testimony); *see also Burch v. Millas*, 663 F. Supp. 2d 151, 195 (W.D.N.Y. 2009) (noting the Supreme Court has yet to find polygraph evidence reliable, and holding the petitioner could not show his favorable polygraph test results were "reliable" new evidence for purposes of demonstrating actual innocence or a miscarriage of justice).

Further, evidence that M.G. and K.G. may have falsely accused Mr. Beckman of sexual molestation does not demonstrate Petitioner's actual innocence. There was never any question in this case about the identity of the alleged perpetrator; further, the alleged abuse by Mr. Beckman occurred a year after the abuse by Petitioner. *See* Trial Court's Ex. 2.

## B. Petitioner's Remaining Claims

As to Petitioner's remaining claims, Judge Erwin concluded that the OCCA's rulings were entitled to deference and that the OCCA reasonably applied federal law in rejecting the claims. Upon *de novo* review, the Court concurs with these conclusions.

The OCCA's decision to apply *Strickland* rather than *Cronic* was reasonable; therefore, it survives AEDPA deference.[6]  To succeed on a claim of ineffective assistance of counsel, a petitioner ordinarily must show that counsel's performance was deficient and that the deficient performance prejudiced the defense.  *Strickland v. Washington*, 466 U.S. 668, 687-688 (1984).

In *Cronic*, the Supreme Court explained that a presumption of prejudice arises when "counsel entirely fails to subject the prosecution's case to meaningful adversarial testing." *United States v. Cronic*, 466 U.S. 648, 659 (1984).  Notably, the Court did not find that the circumstances in *Cronic* itself qualified for this presumption.[7]  It identified *Powell v. Alabama*, 287 U.S. 45 (1932) as a case that would justify a presumption of prejudice without inquiring into counsel's actual performance.  *Cronic*, 466 U.S. at 659.  In *Powell*, an out-of-state attorney was appointed to represent several young, illiterate defendants on the day of their trial "for a highly publicized capital offense."  *Id*. at 660.

Since that time, the Supreme Court, the Tenth Circuit and other circuits have emphasized the narrow scope of *Cronic*.  In *Bell*, the Supreme Court identified three situations where a petitioner need not show prejudice:  (1) "First and '[m]ost obvious'" is the "complete denial of counsel"; (2) if "counsel entirely fails to subject the prosecution's

---

[6] Although the OCCA did not provide significant discussion, the "AEDPA's deferential standard applies not only to claims the state court squarely addressed, but also to claims it reached only cursorily." *Ryder ex rel. Ryder v. Warrior*, 810 F.3d 724, 740 (10th Cir. 2016).

[7] Just 25 days before trial, the district court appointed a young, inexperienced real estate attorney who had never participated in a jury trial to represent Mr. Cronic, who was indicted on mail fraud charges.

case to meaningful adversarial testing"; and (3) "where counsel is called upon to render assistance under circumstances where competent counsel very likely could not." *Bell v. Cone*, 535 U.S. 685, 696 (2002). *Bell* emphasized that an "attorney's failure must be complete." *Id.* at 697. *See also Hooks v. Workman*, 689 F.3d 1148, 1186 (10th Cir. 2012) (emphasis in original) ("When the Court in *Cronic* spoke of 'a breakdown in the adversarial process,' it envisioned a situation in which 'counsel *entirely fails* to subject the prosecution's case to meaningful adversarial testing.'"); *Turrentine v. Mullin*, 390 F.3d 1181, 1208 (10th Cir. 2004) ("This Court has repeatedly found the *Cronic* presumption inapplicable where "counsel actively participated in all phases of the trial proceedings."); *United States v. Lustyik*, 833 F.3d 1263, 1269 (10th Cir. 2016) ("[C]ounsel's performance must be so lacking that 'in effect, no assistance of counsel is provided.'").

"[B]ad lawyering, regardless of *how* bad, does not support the [per se] presumption of prejudice under *Cronic*." *United States v. Bell*, 795 F.3d 88, 97 (D.C. Cir. 2015) (quoting *Childress v. Johnson*, 103 F.3d 1221, 1229 (5th Cir. 1997) (emphasis in original). Denial of counsel altogether on appeal warrants a presumption of prejudice, but mere ineffective assistance of counsel on appeal does not. *Smith v. Robbins*, 528 U.S. 259, 286 (2000); *see also Goodwin v. Johnson*, 132 F.3d 162, 176, n. 10 (5th Cir. 1997) (appellate counsel's failure to read two days of the trial record falls short of establishing that any deficiency in his performance precluded meaningful appellate review entirely or constituted no assistance of appellate counsel at all).

Although prejudice is presumed where counsel negligently fails to perfect an appeal, here appellate counsel did perfect the appeal. *Johnson v. Champion*, 288 F.3d 1215, 1229-

1230 (10th Cir. 2002).  Moreover, appellate counsel did not abandon his "overarching duty to advocate [Petitioner's] cause."  *Osborn v. Shillinger*, 861 F.2d 612, 628 (10th Cir. 1988).

In Proposition One, appellate counsel raised a due process challenge to Oklahoma's judicial system as it relates to the prosecution of sex crimes.  Counsel emphasized that there was no physical evidence linking Petitioner to the crimes, but rather this was a "he said/she said case," which boiled down to the credibility of the witnesses' testimony.  Counsel generally criticized the statutes allowing admission of child hearsay statements, the use of forensic interviewers employed by the State, the limited access to child victims by defense counsel and the State's ability to file charges spanning allegations over broad periods.  Counsel also touched on the growing attitudes and perceptions in America against sex crimes and asserted that this has led to the weakening of due process protections.

In Proposition Two, appellate counsel argued Petitioner was denied a fair trial because of prosecutorial misconduct during closing arguments.  Admittedly, appellate counsel failed to provide citations to the record for many of the comments challenged and provided incorrect citations to the record for others.  None of the comments challenged on appeal were met with objection by trial counsel; therefore, the OCCA reviewed them for plain error only.

In Proposition Three, appellate counsel asserted that Petitioner received ineffective assistance of trial counsel.  Appellate counsel faulted trial counsel for failing to effectively challenge the State's use of a forensic interviewer, obtain an independent forensic interviewer, file a motion to interview the victims, and file a motion challenging the broad

time frame alleged in the Information. Further, appellate counsel asserted that trial counsel was ineffective for failing to file a motion for improper joinder of the victims.

The Tenth Circuit has applied *Strickland* to claims similar to Petitioner's claims. In *Hooks v. Ward*, 184 F.3d 1206, 1221 (10th Cir. 1999), the Court applied *Strickland* to the petitioner's claims that his appellate counsel rendered ineffective assistance by failing to raise or adequately brief certain issues. In *Hawkins v. Hannigan*, 185 F.3d 1146, 1152 (10th Cir. 1999), the Court applied *Strickland* where the habeas petitioner alleged his appellate counsel was ineffective for failing to raise certain issues on direct appeal.

Having determined that the OCCA's decision to apply *Strickland* was reasonable, the Court reviews the OCCA's analysis under the considerable deference required by *Strickland* and the AEDPA.[8] When considering a claim of ineffective assistance of appellate counsel for failure to raise an issue, the Court first examines the merits of the omitted issue. *Hooks*, 184 F.3d at 1221; *Hawkins*, 185 F.3d at 1152. "If the omitted issue is meritless, then counsel's failure to raise it does not amount to constitutionally ineffective assistance." *Hawkins*, 185 F.3d at 1152. If the issue has merit, the Court must decide whether counsel's failure to raise it on direct appeal was deficient and prejudicial. *Id.* The Tenth Circuit has noted the difficulty in showing deficient performance under these circumstances because counsel "need not (and should not) raise every nonfrivolous claim,

---

[8] "When the claim at issue is one for ineffective assistance of counsel … AEDPA review is 'doubly deferential,' because counsel is 'strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment.'" *Woods v. Etherton*, 136 S. Ct. 1149, 1151 (2016) (internal citations omitted). "In such circumstances, federal courts are to afford 'both the state court and the defense attorney the benefit of the doubt.'" *Id.* (internal citations omitted).

but rather may select from among them in order to maximize the likelihood of success on appeal." *Cargle v. Mullin*, 317 F.3d 1196, 1202 (10th Cir. 2003) (*quoting Smith v. Robbins*, 528 U.S. 259, 288 (2000)). Thus, the Court examines the omitted issue in relation to the arguments counsel did raise. *Cargle*, 317 F.3d at 1202.

An attorney's performance is "deficient" if it falls "outside the wide range of professionally competent assistance." *Strickland,* 466 U.S. at 690. Prejudice involves "a reasonable probability that, but for counsel's unprofessional errors, the result of the [direct appeal] would have been different." *Id*. at 694. "A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.*

### 1. Sub-Claim One – Appellate Counsel's Failure to Challenge the Trial Court's Ruling Preventing Mr. Beckman from Testifying under Oklahoma's Rape Shield Law

Petitioner alleges that appellate counsel rendered deficient performance by failing to raise this issue on direct appeal and had the issue been raised the result of the direct appeal would have been different. The Court disagrees.

Under Oklahoma's rape shield statute, a victim's prior sexual behavior is generally inadmissible. OKLA. STAT. tit. 12, § 2412(A). However, a defendant accused of committing a sexual offense may introduce evidence that the alleged victim made prior "[f]alse allegations of sexual offenses." OKLA. STAT. tit. 12, § 2412(B)(2). If a defendant intends to offer such evidence, he must file a written motion "accompanied by an offer of proof" prior to trial. OKLA. STAT. tit. 12, § 2412(C)(1).

Petitioner filed a witness list indicating he intended to call Kameron Beckman, K.G. and M.G.'s stepbrother, as a witness. In response, the State filed a motion *in limine* under

Oklahoma's rape shield statute. The trial court heard Mr. Beckman's testimony outside the presence of the jury and heard argument from Petitioner and the State.

At the hearing, Mr. Beckman testified that K.G. falsely accused him of attempted molestation and that M.G. falsely accused him of actual molestation. Trial Tr. Vol. I at 25. The Oklahoma County District Attorney's Office filed a probable cause affidavit as to M.G.'s allegations but did not prosecute the matter. *Id*. at 18-19. On cross-examination, Mr. Beckman admitted M.G. and K.G. correctly told police where they could find his drugs and drug paraphernalia. *Id.* at 25, 31. He also corroborated other details of M.G.'s interview at the Care Center – including that there were nights his parents and grandfather were not home because they went to clubs or played Bingo; that he had babysat the girls occasionally; that his parents took showers together; and that he pulled his sister Nicole's arm behind her back and took away a screwdriver that she was playing with. *Id.* at 27-29, 33-34; *see also* Care Center Report at Court's Ex. 2. Mr. Beckman also admitted that "in order for charges not to be filed, [he had] to deny that these things happened." Trial Tr. Vol. I at 34.

The trial court ruled that K.G. made no allegations; thus, there could be no false allegations by her. *Id.* at 44. After reviewing the Care Center Report, the Court found there were "sufficient details [in the report], although not the substance of the criminal details, which are corroborated [by Beckman], and [that Beckman] simply denying the allegation doesn't rise to the level of proving those prior allegations … are false." *Id.* at 44-45. Further, the trial court found that the fact that charges were not filed did not "prove

that the allegations were false even by a preponderance of the evidence." *Id.* at 45. The trial court granted the State's motion *in limine*. *Id.*

If appellate counsel had challenged the trial court's ruling on direct appeal, he would have had to show that the trial court ruled incorrectly under Oklahoma law or that excluding Mr. Beckman's testimony violated the federal constitution.[9] Petitioner has not made that showing.

The trial court excluded Mr. Beckman's testimony because Petitioner lacked any proof that M.G.'s allegations against Mr. Beckman were false. Mr. Beckman "simply denying the allegation doesn't rise to the level of proving these prior allegations … are false" nor does the fact that charges were not filed. Trial Tr. Vol. I at 45. This ruling was consistent with the OCCA's decision in *Woods* that, when a defendant can offer no "facts in reasonable support" of an accusation that a victim made prior false allegations, such an accusation is not probative of the victim's character for truthfulness. *Woods*, 657 P.2d at

---

[9] Petitioner argued that the quantum of evidence required to prove a false allegation is an unanswered question in Oklahoma; thus, making it ripe for review in light of the trial court's requirement that Petitioner prove the falsity of the allegations beyond a reasonable doubt. [Doc. No. 5 at 31-32]. Petitioner's arguments are unpersuasive. First, the trial court did not require Petitioner to prove the falsity of the allegations beyond a reasonable doubt. Trial Tr. Vol. I at 44-45. Second, the quantum of proof necessary is not unsettled under Oklahoma law. *See Levering v. State*, 315 P.3d 392, 398 (Okla. Crim. App. 2013) (must offer "proof reasonably supporting his claim" that the allegation is false); *Walker v. State*, 841 P.2d 1159, 1161 (Okla. Crim. App. 1992) (must offer proof reasonably supporting the falsity of the allegation); *Woods v. State*, 657 P.2d 180, 182 (Okla. Crim. App. 1983), *overruled in part on other grounds by Beck v. State*, 824 P.2d 385 (Okla. Crim. App. 1991) (defense counsel must show to the trial court "that he has a sufficient quantum of proof providing a reasonable basis for the proposed line of interrogation"; "[i]f the defense cannot offer to the court facts in reasonable support of the falsity of prior accusations, then they have no probative value for impeachment purposes and should not be allowed as a subject on cross-examination.").

182; *see also Levering*, 315 P.3d at 398 (trial court properly excluded a police report regarding the victim's prior purported false allegations of sexual offenses where there was no evidence that the allegations in the police report were false).

Further, Petitioner fails to establish that the exclusion of Mr. Beckman's testimony amounted to a violation of Petitioner's constitutional rights. Rooted in the Due Process Clause of the Fourteenth Amendment and the Compulsory Process and Confrontation Clauses of the Sixth Amendment, "the Constitution guarantees criminal defendants a meaningful opportunity to present a complete defense." *Dodd v. Trammell,* 753 F.3d 971, 985 (10th Cir. 2013) (*quoting Crane v. Kentucky*, 476 U.S. 683, 690 (1986)). As such, "[r]estrictions on a criminal defendant's rights to confront adverse witnesses and to present evidence 'may not be arbitrary or disproportionate to the purposes they are designed to serve.'" *Dodd*, 753 F.3d at 985 (*quoting Michigan v. Lucas*, 500 U.S. 145, 151 (1991)). "At the same time, however, the Supreme Court has never questioned the traditional reasons for excluding evidence that may have some relevance." *Dodd*, 753 F.3d at 985. Moreover, "'[o]nly rarely'" has the Supreme Court "'held that the right to present a complete defense was violated by the exclusion of defense evidence under a state rule of evidence.'" *Id.* at 986. (*quoting Nevada v. Jackson*, 133 S.Ct. 1990, 1992 (2013)). Examples of such a violation include when "the state court either had provided no rationale for the exclusion, could not defend an absurd rule, or had failed to examine the reliability of the specific evidence in that case." *Id.* at 987 (citations omitted).

Oklahoma's requirement that an accusation of a prior false allegation be predicated on a showing of "reasonable support" is "not an instance of an absurd, arbitrary or

disproportionate evidentiary rule." *Davis v. Bryant*, Case No. CIV-15-513-M, 2017 WL

8233900, at *8 (W.D. Okla. Aug. 25, 2017), *report and recommendation adopted,* 2018

WL 1385964 (W.D. Okla. March 19, 2018). Rational grounds exist for its exclusion,

including "the impact that could be caused at trial by accusing a person alleging sexual

assault of previously making false allegations of a similar assault, and the consequential

need that the trial court serve as a gatekeeper to ensure that such an accusation is premised

on admissible evidence and not blind assertion." *Id.*

In summary, there is not a reasonable probability that Petitioner's direct appeal

would have been different had his appellate attorney raised this claim. Further, the trial

court's exclusion of Mr. Beckman's testimony did not deprive Petitioner of his right to

confront witnesses or present a defense.[10] At trial, Petitioner testified as to a possible

reason for the girls to fabricate their allegations against him. Trial Tr. Vol. IV at 743-745.

Petitioner testified that shortly before the girls disclosed their accusations of sexual abuse,

Petitioner and the girls' mother had sat down with them and discussed Petitioner adopting

them. *Id.* Petitioner testified that the "girls did not want to be adopted. They wanted to

have their mother and father back together." *Id.* at 744. *See e.g., Hernandez v. Parker*,

Case No. CIV-11-1356-R, 2012 WL 6202974, at *3-8 (W.D. Okla. Nov. 21, 2012) (the

---

[10] Although Petitioner alludes to the argument that the trial court's ruling violated his constitutional right to confront and cross-examine his accusers [Doc. No. 5 at 32], it does not appear from the trial court record that Petitioner attempted to cross-examine the victims about any prior false allegations of sexual abuse. Instead, Petitioner attempted to present the evidence through Mr. Beckman's testimony, his own witness. As a result, Petitioner was not denied any opportunity for cross-examination based on the exclusion of Mr. Beckman's testimony.

OCCA reasonably applied federal law when it held that the trial court's exclusion of witnesses who would claim the victim had made false allegations of sexual misconduct against them did not deprive the petitioner of his constitutional right to present a defense because petitioner lacked any evidence the prior allegations had been false and thus lacked any "specific instances of conduct for purposes of attacking [the victim's] credibility"), *report and recommendation adopted*, 2012 WL 6197461 (W.D. Okla. Dec. 12, 2012), *certificate of appealability denied*, 524 Fed. Appx. 401 (10th Cir. 2013), *cert. denied*, 134 S.Ct. 1319 (2014).

### 2. Sub-Claim Three – Appellate Counsel's Failure to Challenge Trial Counsel's Failure to Call Kathy Hatelid to Testify Regarding a Lack of Physical Injuries to K.G. and M.G.

Petitioner alleges that appellate counsel rendered deficient performance by failing to challenge trial counsel's failure to call Kathy Hatelid, a physician's assistant at Children's Hospital, to testify that there was no evidence of physical injury. The Court finds that the OCCA reasonably applied *Strickland* in rejecting this claim on the merits.

Both K.G. and M.G. testified that they had no bleeding or injuries. Trial Tr. Vol. II at 358, 369, 419. Further, the State and Petitioner's trial counsel addressed the lack of physical injury during closing arguments. Trial Tr. Vol. IV at 902-903, 916-917, 925-926. Ms. Hatelid's physical examination of M.G. was on June 19, 2009. [Doc. No. 13-5 at 42-55]. The girls' last contact with Petitioner was in March 2009, three months before the physical exam. It does not appear that K.G. actually underwent a physical exam, although she met with Ms. Hatelid. [Doc. No. 13-5 at 56-69]. Finally, Ms. Hatelid's evaluation of M.G. is not helpful to Petitioner. Ms. Hatelid indicated that both the clinical evaluation

and physical examination were consistent with the history of sexual abuse. [Doc. No. 13-5 at 50]. Thus, Petitioner has failed to establish that Ms. Hatelid's testimony would have changed the outcome of the trial, and appellate counsel, therefore, had no obligation to raise the meritless claim on direct appeal. *Cargle*, 317 F.3d at 1202-1203.

### 3. Sub-Claim Six – Appellate Counsel's Failure to Raise a Prosecutorial Misconduct Claim Involving the State's Statement in Closing Argument that the Girls had no Motive to Lie

During closing argument, the State addressed Petitioner's theory that the girls were lying about the abuse. "They came in here and they told you the truth about what they remember about being victimized for years …" Trial Tr. Vol. IV at 877. "You have not heard any motive whatsoever for these little girls to come up with this." *Id*. at 911. Petitioner argues that those statements constitute prosecutorial misconduct. In essence, he contends that the prosecutor argued there was no evidence the girls were dishonest, but relied on the motion *in limine* to keep out such testimony from Mr. Beckman. [Doc. No. 13-5 at 37].

Citing to *McKinney v. State*, Petitioner claims the OCCA has reversed convictions where the State moved to exclude evidence and then relied on the absence of that evidence at trial. *See Jerry Wayne McKinney v. State of Oklahoma*, Case No. F-99-925 (Okla. Crim. App. June 20, 2000) (unpublished) [Doc. No. 5-3]. Petitioner blames his appellate attorney for not raising the issue on direct appeal.

Petitioner's reliance on *McKinney* is misplaced. McKinney was convicted by a jury of three counts of first-degree murder and sentenced to three life sentences. *Id*. at 1. McKinney admitted to the jury that he shot the victims, the Dwight brothers. *Id*. at 2. In

defense, he wanted to show he was angry because the Dwight brothers came after him, vandalized his car and severely injured his friend Bacon. *Id.* Although the trial court allowed evidence that the Dwight brothers had attacked McKinney, it prohibited any reference to the attack on Bacon. *Id.* The prosecution used this ruling to its advantage by arguing 12 times in closing argument that McKinney killed the Dwight brothers because they busted his car windows. *Id.* The OCCA held that "[u]nder the narrow circumstances of this case the trial court's ruling, aggravated by the State's argument, misled the jury and denied McKinney a fair trial with a reliable result." *Id.*

On appeal, McKinney argued that the attack on Bacon should have been admitted as *res gestae* evidence. Although the trial court reluctantly gave an instruction on the lesser-included offense of first-degree manslaughter, the OCCA found that without the evidence of the attack on Bacon there was no reasonable evidence of manslaughter. *Id.* at 3. The OCCA found that in order for the jury to make sense of McKinney's claim, "the jury was entitled to hear about his recent discovery that the Dwights had not only vandalized his car but beaten his friend badly." *Id.* at 4. Instead, the prosecution was able to argue that "no reasonable person would shoot three people in the head just because they broke his car windows." *Id.* The OCCA found that the attacks on Bacon and the vandalism of the car were contemporaneous, and that McKinney discovered them at the same time. Such evidence was relevant to McKinney's state of mind for murder or manslaughter. *Id.*

The OCCA found that the State "exacerbated" the trial court's incorrect evidentiary ruling by arguing "vigorously" in closing that McKinney shot the Dwight brothers because they vandalized his car. *Id.* at 5. In effect, the State took advantage of the trial court's

ruling by arguing facts "it knew to be untrue." *Id.* Further, McKinney had no way to challenge the State's characterization. *Id.*

These "narrow circumstances" were not present in Petitioner's case. First, as evidenced *supra* at 19-24, Petitioner has failed to show that the trial court made an incorrect evidentiary ruling by excluding Mr. Beckman's testimony. In addition, there was never any question in this case about the identity of the alleged perpetrator. Further, the alleged abuse by Mr. Beckman occurred a year after the abuse by Petitioner. As such, it could not be considered *res gestae*.

Second, the State was not arguing facts "it knew to be untrue," but rather was simply responding to Petitioner's testimony that the girls were lying because they did not want Petitioner to adopt them, they wanted their mother and father back together, and they wanted to live with their dad. Trial Tr. Vol. IV at 743-745, 875-877, 911-912. Petitioner also testified that he "was a giant kid" himself and that he regularly took the girls to the park, on picnics, and played softball with them. *Id.* at 742. Again, the State's comments in closing argument about the girls having no reason to lie were in direct response to Petitioner's testimony.[11] *Id.* at 877. *See e.g., Duvall v. Reynolds*, 139 F.3d 768, 795 (10th Cir. 1998) (prosecutor is allowed reasonable amount of latitude in drawing inferences from the evidence during closing argument); *United States v. Hernandez-Muniz*, 170 F.3d 1007,

---

[11] "They came in here and they told you the truth about what they remember about being victimized for years as children by this defendant … According to the defendant, these girls had a stellar life with him. Things were great. They did fun stuff … They played sports. Everything was great. If that is true, why did they want out? Why go live in a shelter?" Trial Tr. Vol. IV at 877.

1011 (10th Cir. 1999) (the court must view the prosecutor's comments in the context of the entire case).

There is no reasonable likelihood that the OCCA would have reached a different result on direct appeal had appellate counsel raised this issue. Accordingly, the Court finds that the OCCA reasonably rejected this claim.

### 4. Sub-Claim Eight – Appellate Counsel's Failure to Challenge the Inadmissibility of Polygraph Results as an Equal Protection Violation

Finally, Petitioner argues that his appellate counsel should have argued on direct appeal that the general inadmissibility of polygraph test results in Oklahoma is an equal protection violation. The Court agrees with Judge Erwin's conclusion with respect to this claim and cannot add significantly to his thorough analysis of this issue. Accordingly, the Court adopts the Report and Recommendation as to those findings.

### CONCLUSION

After a complete review of the transcripts, trial record, appellate record, record on post-conviction proceedings, briefs filed by Petitioner and Respondent, and the applicable law, the Court finds Petitioner's Amended Petition for Writ of Habeas Corpus [Doc. No. 5] is without merit. Accordingly, habeas relief on all grounds is DENIED. Further, there is no need for an evidentiary hearing, and Petitioner's request in that regard is DENIED. A judgment shall be issued forthwith.

IT IS FURTHER ORDERED that pursuant to Rule 11(a) of the Rules Governing Section 2254 Cases, the Court must issue or deny a certificate of appealability ("COA") when it enters a final order adverse to a petitioner. A COA may issue only if Petitioner

"has made a substantial showing of the denial of a constitutional right." *See* 28 U.S.C. § 2253(c)(2). "A petitioner satisfies this standard by demonstrating that jurists of reason could disagree with the district court's resolution of his constitutional claims or that jurists could conclude the issues presented are adequate to deserve encouragement to proceed further." *Miller-El v. Cockrell*, 537 U.S. 322, 327 (2003); *see Slack v. McDaniel*, 529 U.S. 473, 484 (2000). "When the district court denies a habeas petition on procedural grounds without reaching the prisoner's underlying constitutional claim, a COA should issue when the prisoner shows, at least, that jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right and that jurists of reason would find it debatable whether the district court was correct in its procedural ruling." *Slack*, 529 U.S. at 484. Upon consideration, the Court finds the requisite standard is not met in this case. Therefore, a COA is DENIED. The denial shall be included in the judgment.

IT IS SO ORDERED this 18th day of April 2018.

TIMOTHY D. DeGIUSTI
UNITED STATES DISTRICT JUDGE